UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X

DR. ROBERT ALONSO,                                    COMPLAINT

## 09 CIV. 9995

                  Plaintiff,            09 CV

     -against-                                JURY TRIAL DEMANDED   JUDGE SEIBEL

DENNIS JOHNSTON, Senior Special Investigator,          ECF CASE
FRANK BLUSZCZ, Senior Special Investigator,
and DANA ROTH, Special Assistant Attorney
General, State of New York, Elliot Spitzer, as
the former Attorney General of the State of
New York and the Attorney General of the
State of New York, Andrew Cuomo,

              Defendants.
————————————————————————X

     Plaintiff DR. ROBERT ALONSO, by his attorney, JOSEPH A. MARIA, P.C.,

complaining of the defendants, respectfully alleges as follows:

### PRELIMINARY STATEMENT

     1.    Dr. Robert Alonso brings this action for compensatory damages, punitive

damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations

of his civil rights, as said rights are secured by said statutes and the Constitutions of the State

of New York and the United States.

### JURISDICTION

     2.    This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and

the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

     3.    Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

VENUE

4.       Venue is properly laid in the Southern District of New York under 28 U.S.C. §

1391(b), in that this is the District in which the claim arose.

JURY DEMAND

5.       Dr. Robert Alonso respectfully demands a trial by jury of all issues in this matter

pursuant to Fed. R. Civ. P. 38(b).

PARTIES

6.       At all times hereinafter mentioned, plaintiff Dr. Robert Alonso is a dentist duly

licensed to practice dentistry in the State of New York, with a dental office located at 60t$^h$ Street

and Park Avenue, in the County, City and State of New York.

7.       Dr. Robert Alonso is married to Emilia Alonso.

8.       Dr. Robert Alonso is a resident of the County of Westchester, State of New

York.

9.       At all times hereinafter mentioned, defendant DENNIS JOHNSTON was a Senior

Special Investigator working in the Medicaid Fraud Unit of the New York State Attorney General's

Office located at One Blue Hill Plaza, Pearl River, New York and other offices as designated by

the Attorney General's Office of the State of New York.

10.      At all times hereinafter mentioned, defendant FRANK BLUSZCZ was a Senior Special

Investigator working in the Medicaid Fraud Unit of the New York State Attorney General's Office,

located at One Blue Hill Plaza, Pearl River, New York and other offices as designated by the

Attorney General's Office of the State of New York.

11.      The State of New York is a duly incorporated political subdivision duly organized

in the State of New York.

- 2 -

12.     At all times hereinafter mentioned the Defendant ELLIOT SPITZER was the attorney General in the State of New York when these actions were commenced against the Plaintiff, Dr. Robert Alonso.

13.     At all times hereinafter mentioned the attorney General with the State of New York ANDREW CUOMO commenced the cases against the Plaintiff herein.

14.     At all times hereinafter mentioned, defendant DANA ROTH was a Special Assistant Attorney General working in the Medicaid Fraud Control Unit of the New York State Attorney General's Office, One Blue Hill Plaza, Pearl River, New York.

15.     At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of law as defined by 42 U.S.C. 1983 *et al.*

## FACTS

16. On December 7, 2006, between 1:00 p.m. to 2:00 p.m., Emilia Alonso (not a party to this action) was lawfully driving her vehicle on Hallocks Run, in the town of Somers, Westchester County, New York.

17. At the aforesaid time and place, Emilia Alonso was suddenly accosted by defendants FRANK BLUSZCZ and DENNIS JOHNSTON allegedly acting under color of law.

18.     Detective FRANK BLUSZCZ rapidly approached Emilia Alonso's vehicle from the left side, holding his badge against the window, and forcing Emilia Alonso to stop the vehicle in front of 19 Hallocks Run, Somers, New York 10589.

19.     Thereafter, defendants FRANK BLUSZCZ and DENNIS JOHNSTON informed Emilia Alonso that she was under arrest for Medicaid fraud.

20.     Upon hearing this false accusation, Emilia Alonso informed defendants BLUSZCZ and JOHNSTON that she wished to speak with an attorney.

21.    Notwithstanding this request, Defendants BLUSZCZ and JOHNSTON refused to permit Emilia Alonso to speak with an attorney.

22.    Defendants BLUSZCZ and JOHNSTON threatened to make "a scene" in front of the neighbors if she insisted upon speaking with an attorney.

23.    Defendants BLUSZCZ and JOHNSTON forcibly placed Emilia Alonso into their vehicle.

24.    Defendant BLUSZCZ got into Emilia Alonso's vehicle and drove into the driveway at 40 Hallocks Run, Somers, New York where Dr. Robert Alonso and Emilia Alonso lived as husband and wife with their son.

25.    Defendant JOHNSTON ordered Emilia Alonso to make a phone call to her husband, Robert Alonso on her cellular phone.

26.    These actions allowed the Defendants to arrest Dr. Robert Alonso without a warrant as he would be outside of his home.

27.    Defendants BLUSZCZ and JOHNSTON then unlawfully entered the Alonso's residence at 40 Hallocks Run to conduct illegal and unlawful activities.

28.    Defendants BLUSZCZ and JOHNSTON then took Emilia Alonso and Dr. Robert Alonso to New Rochelle for an arraignment on charges.  See Exhibit "1" annexed hereto and make a part hereof as if fully set forth herein.

29.    The court in New Rochelle did not have jurisdiction over this matter and Dr. Robert Alonso and Emilia Alonso were taken to another criminal court.

30.    Defendants BLUSZCZ and JOHNSTON took Emilia Alonso and Dr. Robert Alonso to another criminal court in Chappaqua, New York.

31.    After further delay, Dr. Robert Alonso and Emilia Alonso were arraigned at this Court, where bail was set at $100,000.00 on the indictment attached hereto as Exhibit "1"

32.     Dr. Robert Alonso was sent to Westchester County Jail, where he was unlawfully detained and imprisoned.

33.     Robert Alonso, who had never been to jail, was subjected to extreme and humiliating conditions, suffering multiple deprivations and hardships as a result of his unlawful arrest.

34.     The Defendants DANA ROTH, ELLIOT SPITZER as Attorney General and ANDREW CUOMO as Attorney General (hereinafter "Government Officials) are not entitled to absolute immunity as the induced witnesses to give false testimony and their using such false evidence to secure an indictment.

35.     It is alleged herein that the "Government officials) deprived the Plaintiff Dr. Robert Alonso of his liberty on the basis of false evidence fabricated by them or their agents which they approved.

36.     Each and every allegation in the false indictment (Exhibit "1") was false, misleading.

37.     The Defendants herein had ethical duties to the people of the State of New York and to the Plaintiff herein to only prosecute and obtain indictments against persons who have reason to believe had committed a crime.

38.     The Plaintiff herein had not only not committed any crimes but in fact had done good and charitable work for a large majority of the patients the Defendants claim he misappropriated funds.

39.     Each and every item of the indictment herein were false, misleading, vague, not accurate and deliberately drafted in the manner in which other aspects could be drawn in to the indictment but not giving any specific information.

39.     The Plaintiff herein had worked specifically at hospitals with hospitals charge

and the Defendants herein had never taken the time to accurately reflect the manner in which the billing was performed and the proper charging of the work that was done.

40.    The Defendants herein specifically stated that there was a large amount of money due and owing when in fact the monies owed to Dr. Robert Alonso were funds due over a long period of time which the appropriate state agencies had not paid.

41.    There is reason to believe that the Defendants DENNIS JOHNSON and FRANK BLUSZCZ found a doctor with a large amount of money due and owing to him and in excess of six figures and decided that it must have been Medicaid fraud.

44.    At no time did any of the Defendants take the proper care and caution for an indictment of this type of nature.

45.    At the Trial of this matter each and every witness called was found that had given false testimony and/or misrepresented the facts or had in fact not known what was really the basis of the indictment.

46.    Each and every fact which was alleged to make up the grand larceny in the First Degree Count was not accurate, improperly investigated and maliciously pre-thought by the Defendants herein because they knew the Information they had was not appropriate for an indictment of that nature.

47.    The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso. The First Count involving Grand Larceny in the First Degree was issued by the Defendants and was fraudulent, misrepresented and did not contain any facts which will back up such a blame.

48.    The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso. The Second Count involving invoice number 471689838 was fraudulent, misrepresented and did not contain any facts which were

grounded in actual reliable facts.

49.     The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Third Count involving invoice number 052512533014 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

50.     The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Fourth Count involving invoice number 051532480067 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

51.     The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Fifth Count involving invoice number 052562606004 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

52.     The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Sixth Count involving invoice number 052432575017 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

53.     The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Seventh Count involving invoice number 45806 4036 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

54.     The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Eighth Count involving invoice number 45806 6124 was fraudulent, misrepresented and did not contain any facts which were

grounded in actual reliable facts.

55.     The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Ninth Count involving invoice number 47054 2563 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

56.     The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Tenth Count involving invoice number 46401 6861 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

57.     The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Eleventh Count involving invoice number 052912519062 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

58.     The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Twelfth Count involving invoice number 40143 3354 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

59.     The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Thirteenth Count involving invoice number 40143 5208 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

60.     The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Fourteenth Count involving invoice number 38331 8892 was fraudulent, misrepresented and did not contain any facts which were

grounded in actual reliable facts.

61.    The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.   The Fifteenth Count involving invoice number 42009 0921 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

62.    The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.   The Sixteenth Count involving invoice number 42009 2757 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

63.    The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Seventeenth Count involving invoice number 47169 3042 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

64.    The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.   The Eighteenth Count involving invoice number 38980 2087 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

65.    The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.   The Nineteenth Count involving invoice number 38082 6576 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

66.    The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.   The Twentieth Count involving invoice number 47054 3301 was fraudulent, misrepresented and did not contain any facts which were

grounded in actual reliable facts.

67.   The Defendants alleged twenty counts of offering a false instrument for filing in the First Degree against Dr. Robert Alonso.  The Twenty-First Count involving invoice number 46401 6114 was fraudulent, misrepresented and did not contain any facts which were grounded in actual reliable facts.

68.   Specifically, for over twenty years, ROBERT ALONSO, D.D.S., had delivered high-quality dental care to special needs children in the New York metropolitan region.

69   These special needs children consisted of mentally retarded children, autistic children, children with cerebral palsy and children infected with AIDS.

70.   As a result of his extensive knowledge and expertise in this field, Dr. Alonso had been sought after as lecturer both nationally and worldwide.

71.   Dr. Alonso had an impeccable reputation and record as a dentist.

72.   None of Dr. Alonso's patients or their families had ever filed a complaint against him in forum.

73.   None of Dr. Alonso's patients or their families had ever filed a dental malpractice claim against him.

74.   In all of his years in practice, Dr. Alonso had never before been accused of any crime or misdemeanor.

75.   From the very outset, defendants knew that they had no evidence of any criminal wrongdoing against Dr. Robert Alonso.

76.   Nonetheless, defendants made a deliberate and willful decision to arrest Dr. Robert Alonso in furtherance of their malicious behavior.

77.   Defendants arrested Emilia Alonso for the sole purpose of inducing her husband, Dr. Robert Alonso, to quickly enter into a plea agreement.

78.     When it became clear that this strategy would not work defendants resorted to highly unethical and improper tactics to create a case against Emilia Alonso all of which were malicious acts against Dr. Robert Alonso.

79.     Specifically, defendants unlawfully conspired and induced a witness, Dr. Emile Agrait – a dentist employed by Dr. Robert Alonso – to change her story and implicate Emilia Alonso by falsely accusing her of making alterations to Dr. Agrait's chart all of which put additional pressure on Dr. Robert Alonso because such behavior hurt the entire Alonso family and including its head Dr. Robert Alonso.

80.     These acts were blatant fabrications and were demonstrably false.

81.     Defendants knew there allegations was false, but nonetheless, deliberately, willfully and knowingly induced Dr. Agrait to make this claim in order to preserve their baseless charges against Emilia Alonso and Dr. Robert Alonso.

82.     In the months following the arrests of the Alonso's, defendants' investigation was at a standstill.

83.     Despite reviewing several hundred patient files of Dr. Robert Alonso, defendants still had not recovered sufficient evidence to secure an indictment, much less a conviction.

84.     Unable to prove their baseless claims against Dr. Robert Alonso defendants set upon gathering additional "evidence" to justify her unlawful arrest in December 2006.

85.     Specifically, on March 28, 2007, defendant Johnson submitted an application for a search warrant before Judge McDermott.

86.     In his application for a search warrant, defendant Johnson repeatedly lied under oath, making numerous false and grossly misleading statements to Judge McDermott in order to procure a search warrant and further pursue charges against Dr. Robert Alonso.

87.     Specifically, in his application for a search warrant, defendant Johnson

- 11 -

attempted to implicate Emilia Alonso by, <u>inter</u> <u>alia</u>:

> Falsely claiming that Diane Vega — Dr. Alonso's office manager — had told him that Emilia Alonso visits the New York City Office "with regularity", when in fact, Ms. Vega had never made such statements, and in any event, this claim was false;

> •Falsely claiming that Diane Vega had stated that Doctor Alonso's schedules are generated by Emilia Alonso on a computer — and that these computer files contain Medicaid patients names and their Medication identification numbers — when in fact, Ms. Vega had never made such statements, and in any event, these claims were false; and.

> Falsely claiming that Diane Vega had stated that Emilia Alonso creates Dr. Alonso's hospital schedules and faxes them to both the hospitals where he treats medicaid recipients and to her at Dr. Alonso's New York City office, when in fact, Ms Vega had never made such statements, and in any event, these claims were false.

88.    In addition to the foregoing misrepresentations, defendant Johnson made

several other false and misleading statements in his application for a search warrant. Specifically,

defendant Johnson, inter alia:

- Falsely claimed to have met with several witnesses, when in fact, he had never met such witnesses;
- Falsely claimed to have showed various documents to witness, when in fact, he had never shown such documents to said witnesses;
- Falsely claimed that the witnesses did not show proof of dental work in their mouths, when in fact, they had done so;
- Falsely claimed that patients told him they never went back to Dr. Alonso, when in fact, they had told Mr. Johnson that they had, in fact, gone back to Dr. Alonso;
- Falsely claimed that he had spoken to the patient's parent and/or natural guardian, when in fact, he had spoken to a different relative or acquaintance of the patient;
- Falsely claimed that interviewed persons stated they had never heard of Dr. Alonso, when in fact, they had not only heard of Dr. Alonso but actually knew him from direct acquaintance;
- Falsely claimed that Dr. Alonso had seen certain patients in New York 1989,
  when in fact, Dr. Alonso was in Pittsburgh, Pennsylvania in 1989.
- Falsely claimed that certain handwritten entries found in the chart of Dr. Emile Agrait belonged to either Dr. Alonso or EMILIA ALONSO, when in fact, defendant Johnson knew that such handwriting belonged to

neither one of the Alonsos.

89.     All of the foregoing lies and misrepresentations of defendant Johnson were eventually exposed during the criminal trial of Dr. Robert Alonso. At the time when they were first made, however, defendant Johnson's misrepresentations were accepted as true by Judge McDermott, who issued a search warrant authorizing the search of the Alonsos' home residence.

90.     As a result of the false and misleading representations made by defendant Johnson, defendants obtained permission to search Dr. Robert Alonso's residence.

91.     In executing this search warrant, defendants repeatedly and flagrantly violated the scope of the search, seizing items that had no bearing whatsoever on the matters that were under investigation.

92.     During this search, defendants also illegally and blatantly disregarded established protocols for conducting a proper search, committing multiple infractions and violations of standard search procedures, and engaging in grossly inappropriate and unprofessional conduct while conducting the search.

93.     As a result of defendants' completely unlawful and improper search, defendants seized several pieces of "evidence" relating to the Alonsos' personal finances, including bank statements, tax returns, and other financial documents.

94.     None of these documents contained any incriminating information whatsoever, nor were they even tangentially related to the charges pending against the Alonsos.

95.     The Alonsos are re-arrested In July 2007 on trumped-up Money Laundering Charges which were totally groundless.

96.     Rather than admit that they had recovered nothing of evidentiary value during the search, defendants attempted to justify their unlawful search by claiming that they had, in fact, recovered evidence of wrongdoing inside Dr. Robert Alonso's residence.

97.     This claim was completely baseless, and defendants knew this from the outset.

98.     Each and every piece of "evidence" allegedly seized during the search was in fact entirely consistent with the innocence of Dr. Robert Alonso and was in no way probative of any criminal wrongdoing.

99.     Notwithstanding this fact, on July 7, 2007, the Alonsos were arrested again and charged with Money Laundering in the Second Degree, a class C Felony.

100.    Dr. Robert Alonso was accused of making financial transactions and filing false financial disclosure statements in an effort to hide assets from the courts.

101.    These charges were entirely baseless, and defendants knew this from very outset.

102.    The alleged "money laundering" account was, in fact, a private savings account which had been set up in the early 1990's by the Alonsos on behalf of their only child, and as such, was listed under their son's name and social security number.

103.    Following the first arrest of the Alonsos in December 2006, the New York State Attorney General's Office issued a press release announcing the arrest of Dr. Robert Alonso.

104.    Specifically, the press release boasted, in an all-capital letters headline, that:

"DENTIST AND SPOUSE CHARGED WITH STEALING FROM MEDICAID"

105.    The press release went on to say as that "Attorney General Spitzer today announced that a Westchester dentist and his wife have been charged with stealing more than $250,000 from the Medicaid program", that both defendants had been " charged with Grand Larceny in the Second Degree." and that "the charges carry a maximum penalty of 15 years in state prison." All of which was knowingly false and done in a malicious press release.

After being arrested for a second time on July 7, 2007, Dr. Robert Alonso was, once again, subject of highly prejudicial news coverage.

14

106.     In an article which appeared in the Westchester Journal News, dated May 11, the arrest of Dr. Robert Alonso resulted in a caption which read, in bold letters, **"Medicaid theft tops $ 2.5M, state says."**

107.     The article went on to repeat many of the false and utterly baseless accusations launched by defendants, including that Dr. Robert Alonso was guilty of "bilking Medicaid out of more than $2.5 million", that Dr. Robert Alonso had secretly been "planning to leave the country", that Dr. Robert Alonso had "used stolen money to reimburse his father for his retirement savings that he used to post the dentist's original bail," all of which damaged Dr. Robert Alonso's reputation and business and caused him serious financial losses.

108.     As a result of the bad publicity generated by this article, as well as from the press release issued by the New York State Attorney General's Office, Dr. Robert Alonso lost at least 50 to 60 private patients from his private practice, in addition to having his Medicaid practice completely shut down as a result of being summarily terminated from the Medicaid program.

109.     Defendants froze the Alonsos' assets and placed a lien on their home.

110.     Apart from impairing Dr. Robert Alonso's ability to make a living, defendants did everything in their power to wreak financial havoc on Dr. Robert Alonso.

111.     On December 8, 2006, a civil action was commenced in Westchester Supreme Court for $1,000,000.00, despite the fact that the amount of larceny alleged in the accusatory instrument was $250,000.00. The civil action says $750,000.00 of Medicaid payments were illegally made but there was actually no proof of any fraud.

112.     In connection with this entirely baseless civil claim, defendants proceeded to freeze all of Dr. Robert Alonso's business and personal bank accounts, thus completely

preventing Dr. Robert Alonso from having access to his own money.

113.    Defendants even went so far as to freeze the personal bank account of Dr. Robert Alonso's only son, who was attending college at the time and had no connection whatsoever to the allegations made in the indictment causing him to change schools due to costs.

114.    Defendants also placed a lien on the Alonsos' home, thereby precluding its use as a source for generating revenue to help finance the costs of litigation.

115.    Defendants' actions had a devastating financial impact on the Dr. Robert Alonso and his family.

116.    The Alonsos suffered immediate and severe monetary repercussions, having virtually no income to cover daily living expenses, much less cover their rapidly accumulating substantial legal bills and the operation of his office in New York City.

117.    The Defendants' flagrant violation of <u>Brady v. Maryland</u>.

118.    In the year leading up to the trial of the Alonsos, defendants conducted multiple and repeated interviews of Dr. Emile Agrait.

119.    When Dr. Agrait first spoke to defendants, she told them an alleged alteration in her charts had been made in handwriting that she recognized as that of Dr. Robert Alonso.

120.    Six months later, Dr. Agrait — after being threatened, cajoled, coerced and intimidated by defendants — told investigators that while she thought most of the alleged alterations were in Dr. Alonso's handwriting, that two or three of them were in his wife Emilia Alonso's handwriting.

121.    Thereafter, Dr. Agrait changed her story once more— again, at the behest of defendants — testifying this time that all of the handwriting appeared to belong to plaintiff